HAWAIIAN PINEAPPLE COMPANY, LIMITED, A CORPORATION, *v.* MASAMARI SAITO AND LIBBY, McNEILL & LIBBY OF HONOLULU, LIMITED, A CORPORATION.

No. 1135.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED MAY 22, 1919.                    DECIDED JUNE 23, 1919.

COKE, C. J., KEMP AND EDINGS, JJ.

SPECIFIC PERFORMANCE—*contract for sale of chattels.*
 Equity will not in general decree the specific performance of contracts concerning chattels because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality.

SAME—*same.*

But where the chattels are such that they are not obtainable in the market or can only be obtained at great expense and inconvenience and failure to obtain them causes a loss which cannot be adequately compensated in an action at law a court of equity will decree specific performance.

CONTRACTS—*damages for loss of profits.*

It is a rule that while under some circumstances a party has a right to recover loss of profits as a part of the damages for a breach of contract it is only where the profits are such as would have accrued and grown out of the contract itself as the direct and immediate result of its fulfillment.

SAME—*same.*

But if the profits are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, they are too uncertain, remote and speculative to be taken into consideration as a part of the damages occasioned by the breach of the contract.

SAME—*measure of damages—resale.*

Where a vendor fails to comply with his contract the general rule for the measure of damages is the difference between the contract price and the market price of the commodity at the time of the breach, but if the contract of purchase is made with a view of a known resale already contracted or any known special use the damages which are contemplated to result from the vendor's breach are those which would naturally result on the basis of the contract for resale or other special use known to the vendor when the contract was made.

SAME—*same—same.*

The contemplation of damages will include such as ordinarily arise according to the intrinsic nature of the contract and the surrounding facts and circumstances made known to the parties at the time the contract was entered into.

SAME—*same—same.*

. If the vendor has notice that his vendee has contracted to resell the article he will be held liable for loss of profits of such resale if he fails to fulfill his contract.

SAME—*same—same.*

But where long after the contract was entered into the vendee contracted to resell the article he could not recover as damages his contemplated profits; his damages would be limited to the difference between the contract price with the vendor and the

Opinion of the Court.

market price of the commodity at the time of the breach of the contract.

SAME—*construction.*

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles and this intention will be gathered not from particular words and phrases but from the whole context of the agreement.

SAME—*reasonableness of construction.*

The rule of reasonableness of construction is that where the language of the contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual and such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred.

OPINION OF THE COURT BY COKE, C. J.

The complainant-appellee, the Hawaiian Pineapple Company, Limited, instituted a suit in equity against Masamari Saito and Libby, McNeill & Libby of Honolulu, Limited, respondents-appellants, for an injunction to restrain Masamari Saito from selling, and Libby, McNeill & Libby from buying, merchantable smooth cayenne pineapples grown and owned by Saito at Leilehua, Island of Oahu. An order to show cause was issued and at the hearing thereon a temporary injunction was issued against the respondents as prayed for. Upon the trial of the suit the writ of injunction was made perpetual. The respondents have prosecuted an appeal to this court. On March 8, 1916, the respondent Saito held under lease certain lots of land at Leilehua aforesaid upon which he was growing pineapples and upon that date he entered into a written contract with the complainant, the Hawaiian Pineapple Company, Limited, for the sale of his pineapple crop, which contract was to be and remain in force from May

1, 1916, to April 30, 1920. The provisions of the contract which are pertinent to the matters under consideration are as follows:

"The Pineapple Company agrees that during the term of four years beginning May 1, 1916, and ending April 30, 1920, it will handle and buy under the conditions as hereinafter detailed, and with such exceptions as are hereinafter stated, all the merchantable smooth Cayenne pineapples that may be grown by the planter on his present holdings at Leilehua, or elsewhere on the Island of Oahu.

"The planter agrees that he will deliver to the Pineapple Company under the terms and conditions and with the exceptions hereinafter contained, all the merchantable smooth Cayenne pineapples that he may grow at Leilehua, or elsewhere on the Island of Oahu, or that he may own or control on the Island of Oahu, during the term stated.

\* \* \* \*

"It is mutually agreed that the pineapple Company will furnish f.o.b. railroad cars at Leilehua, Oahu, lug boxes for the delivery of the fruit, and that the planter will deliver said fruit f.o.b. railroad cars at Leilehua, Oahu, in said lug boxes, and that said merchantable pineapples will be delivered in such condition of ripeness as may from time to time be required or designated by the said Pineapple Company."

Subsequently to the execution of said contract, to wit, on the first day of July, 1916, and on the first day of August, 1916, respondent Saito acquired other leaseholds in and about Leilehua upon which he also grew and produced pineapples. All of the pineapples produced by Saito, both upon his prior and subsequently acquired holdings, were sold and delivered to the Hawaiian Pineapple Company up to and including the month of January 1918. At about the end of January 1918 Saito ceased to deliver to the Hawaiian Pineapple Company pineapples grown upon the leaseholds acquired by him subsequently to the execution of the contract of sale and on about the first day of April,

1918, entered into a contract by which he agreed to sell and deliver to the respondent Libby, McNeill & Libby all pineapples grown and produced by him on the said after-acquired leaseholds.

The appeal of the respondents presents a variety of questions but for the purpose of this opinion we consider it necessary to discuss only the two main features of the controversy. The first goes to the jurisdiction of the court and has its basis in the contention of the respondents that the cause is not cognizable by a court of equity because the complainant has a complete and adequate remedy at law by way of damages, and the second questions the correctness of the construction or interpretation of the contract by complainant and adopted by the court below, it being the contention of the respondents that by the terms of the contract the respondent Saito was only obligated to sell and deliver to the complainant pineapples produced from lands which he owned or controlled on the Island of Oahu at the date of the contract and regarding these pineapples there is no present controversy.

Irrespective of what may be the proper interpretation and effect of the contract we shall proceed first to determine the question of jurisdiction. We will therefore assume for the present, without so deciding, that the respondent Saito was bound under his contract with the complainant to sell and deliver to it the pineapples grown and produced by him upon the premises which he acquired after the date of the contract.

The complainant Hawaiian Pineapple Company owned and operated a large pineapple cannery at Honolulu, some twenty miles from Leilehua; its estimated pack for the year 1918 was 904,671 cases; on or about March 18, 1918, it received and booked orders and agreed to sell its 1918 pack to various customers throughout the United States and elsewhere at a definite and fixed price. In fact it

had agreed to sell more cases of pineapples than it expected to produce but there was an understanding with its customers that in case of a shortage deliveries would be prorated. It appears that the controversy involved about 600 tons of pineapples for the year 1918, and the failure of the respondent Saito to deliver to the Hawaiian Pineapple Company these pineapples resulted in decreasing the pack of the company for that year approximately 20,000 cases. The evidence shows that practically all of the pineapples grown and produced in 1918 on the Island of Oahu were contracted for and that it was impossible for the company by purchase or otherwise to secure other pineapples in lieu of those which it claimed to be entitled to receive from Saito. It will thus be seen that an entirely different state of facts exists to those present in the case of *Lum Wai* v. *Hong Hoon, ante* p. 696, recently decided by this court. In that case specific performance of a contract for the sale of taro was sought but it was not shown that other taro could not be purchased in the open market, and for that reason it was held that a court of equity was without jurisdiction. The principle was there enunciated that "Equity will not in general decree the specific performance of contracts concerning chattels because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality." But in the *Lum Wai* case it was further held that where the chattels are such that they are not obtainable in the market or can only be obtained at great expense and inconvenience and failure to obtain them causes a loss which could not be adequately compensated in an action at law a court of equity will decree specific performance. The respondents do not question the soundness of this doctrine but they urge that because the complainant had already sold his 1918 pack of pineapples, thereby placing a fixed valuation upon the commodity, that by an action of

damages in a court of law it could have adequate compensation for the breach of the contract and that the measure of damages would be complainant's loss of profits ascertained by computing the difference between the price it was to pay Saito for the pineapples under the contract and the price for which it had resold the canned product less the cost of canning and marketing.  It might be possible, although perhaps more or less difficult, to establish with sufficient certainty the cost and expense which would be necessarily incurred in converting 600 tons of raw pineapples into the finished canned product and placing the same on the market.  Risks of various kinds, depreciation, uncertainty of labor and many other uncertain elements might intervene which would entirely upset a careful estimation of cost.  But conceding that the correct figures might be arrived at, could the complainant under the circumstances of this case hold the respondent Saito in damages for its loss of profits?  The rule in this respect is that while under some circumstances a party has a right to recover loss of profits as a part of the damages for a breach of the contract it is only where the profits are such as would have accrued and grown out of the contract itself as the direct and immediate result of its fulfillment, but if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, they are too uncertain, remote and speculative to be taken into consideration as a part of the damages occasioned by the breach of the contract.  In the much canvassed case of *Hadley* v. *Baxendale,* 9 Exch. 341, Anderson, B., in pronouncing the judgment of the court enumerated certain principles on which damages should be awarded for breaches of contract.  The rule there adopted as resting on the foundation of correct legal principles was that the damages recoverable for a breach

of contract were either such as might be considered as arising naturally, i. e., according to the usual course of things from the breach of the contract itself, or such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract. The case of *Masterton* v. *Mayor*, 7 Hill 61, we believe is looked upon as a leading American authority upon the subject. Where a vendor fails to comply with his contract the general rule for the measure of damages is the difference between the contract price and the market price at the time of the breach, but if the contract of purchase is made with a view of a known resale already contracted or any known special use the damages which are contemplated to result from the vendor's breach are those which would naturally result on the basis of the contract for resale or other special use known to the vendor when the contract was made. The contemplation of damages will include such as ordinarily arise according to the intrinsic nature of the contract and the surrounding facts and circumstances made known to the parties at the time the contract was entered into. . If the vendor has notice that his vendee has contracted to resell the article he will be held liable for loss of profits of such resale if he fails to fulfill his contract, though perhaps he was not informed of the price at which the commodity was to be resold. See 1 Sutherland on Damages, 80-84. In *Messmore* v. *The N. Y. S. & L. Co.*, 40 N. Y. 422, the plaintiff contracted to sell to the State of Ohio a large quantity of bullets of a certain quality at a fixed price to be delivered at Columbus, Ohio, and made a contract with defendant by which the latter agreed to manufacture and deliver him the same quality and quantity of bullets and at the time of making the contract the plaintiff informed defendant of his agreement with the State of Ohio and that he was contracting with defendant for the bullets

in order to fill the engagement, and it was held that the proper measure of damages was the difference between the contract price at .which defendant was to furnish the bullets and the price the plaintiff was to receive. And again, in *Marthinson* v. *King*, 150 Fed. 48, where for a valuable consideration the plaintiff procured an option from the defendant for certain growing timber and a logging camp outfit and upon the same day contracted to sell the property to a third party at an advanced price, the defendant having knowledge of the latter contract, and the court finding that both contracts really constituted the same transaction it was held that equity was without jurisdiction to decree specific performance because the plaintiff had an adequate remedy at law in an action for damages, the measure of such damages being the difference between the price plaintiff was to pay defendant for the property and the price which he was to receive therefor under his contract of resale.

In the present case it may be assumed that the respondent Saito knew that the plaintiff entered into the contract for the purpose of obtaining a supply of raw material for the operation of its pineapple cannery but we do not think it can be assumed that Saito had in contemplation that some years later the complainant would resell the article at a profit. There was no stipulation in the contract that the complainant should make profits on the pineapples after the same had been prepared, canned and placed upon the market. Nor were there any special circumstances attending the transaction from which an understanding between the parties could be inferred that the respondent Saito was to make good any loss of profits incurred by reason of a breach of contract upon his part. *Howard* v. *Stillwell & Bierce Mfg. Co.*, 139 U. S. 199, 210. See also *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444. Had the complainant in this case proceeded at law against the

defendant for breach of contract its measure of damages would have been limited to the difference between the contract and the market price of the pineapples at the time of the breach of the contract, for we are clearly of the opinion that, although perhaps there was very little if any of the article to be obtained in the market at the time of the alleged breach, pineapples in the Territory at all times possess a market value which may easily be established in a court of law. Under these circumstances, assuming that the complainant had gone to a court of law for redress, could it have obtained adequate relief? We think not. Complainant contracted to purchase the pineapples for the proper and economical operation of its cannery. The failure of Saito to deliver the pines caused a decrease in the 1918 pack estimated at between 15,000 and 22,000 cases. In view of the fact that other pineapples were not obtainable by the complainant in lieu of those involved in this suit complainant was bound to have sustained a loss which could not have been adequately measured in damages in a court of law under the rules herein laid down. Cans and other equipment, labor, etc., were required to be provided in advance to take care of the contemplated operation of the cannery based upon the estimated tonnage of pineapples to be received at the cannery and for this reason the principles announced in the case of *Curtice Bros. Co.* v. *Catts,* 66 Atl. 935, apply. In that case it was held that where the defendants contracted to sell to the plaintiff the entire product of certain lands planted in tomatoes which plaintiff required for the operation of the cannery to the full capacity thereof that specific performance of the contract by defendants would be decreed upon their refusal to fulfill the terms of the contract. The same doctrine was adopted in *Texas Co.* v. *Central Fuel Oil Co.,* 194 Fed. 1, 13; also in *Equitable Gas Light Co.* v. *Baltimore Coal Tar & Mfg. Co.,* 63 Md.

285; and also in *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.,* 154 Mass., 92, and these authorities received the sanction of this court in *Lum Wai* v. *Hong Hoon, supra.*

We are therefore of the opinion that equity had jurisdiction of the cause and that a court of equity alone could afford complainant adequate relief, provided of course an interpretation of the contract justifies the conclusion that there was a breach thereof.

We will now take up the consideration of the contract in order to construe it as nearly as may be according to the intention of the parties as expressed therein and from such extrinsic facts and circumstances as may properly be taken into consideration.

The paragraphs of the contract requiring construction are contained in the forepart of this opinion. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles and this intention will be gathered not from particular words and phrases but from the whole context of the agreement. The contract must be considered from beginning to end and all its terms must pass in review for one clause may modify, limit or illuminate the other.

In the first paragraph of the contract quoted above the company agreed during the term of four years to buy all the merchantable smooth cayenne pineapples that might be grown by the planter on his *"present holdings"* at Leilehua or elsewhere on the Island of Oahu or that he might own or control on the Island of Oahu. We think from this phraseology there is no room to doubt that the company was obligated to buy only the pineapples grown by Saito on his then holdings at Leilehua or elsewhere on the Island of Oahu. In the following paragraph the planter agreed to deliver to the company all merchantable

smooth cayenne pineapples which he might grow at Leile-
hua or elsewhere on the Island of Oahu or which he might
own or control on the Island of Oahu during the term
stated.   If this latter paragraph could properly be inter-
preted without reference to the other clauses in the con-
tract it might be reasonable to assume that Saito obligated
himself to deliver pineapples grown on his then holdings
or upon any land subsequently acquired at Leilehua or
elsewhere on the Island of Oahu, but this interpretation
would necessarily mean that Saito had contracted to sell
to the company pineapples which the company was under
no obligation to purchase.   We are convinced that such
was not the intention of the parties at the time the con-
tract was entered into.   Their clear intention we think was
to enter into a contract with reciprocal obligations on
both sides, that is to say, the company was obligated to
buy and the planter was obligated to sell all the pineapples
grown by the planter upon his holdings which he possessed
at Leilehua or elsewhere on the Island of Oahu at the date
of the making of the contract, the location and extent of
which were known to the parties at the time and the area
of which was noted in writing upon the contract at the
time of its delivery to the company by one of its repre-
sentatives as containing 150 acres.   The correctness of this
intention is made patent when the further clause in the
contract which requires the planter to deliver all of said
fruit f.o.b. railroad cars at Leilehua, Oahu, is considered.
Assume that subsequently to the date of the contract Saito
acquired land at Waimanalo or at some other locality re-
mote from and inaccessible to Leilehua and that upon this
land he grew and produced pineapples.   In that event if
the construction urged by complainant is to be adopted
Saito would be required to deliver these pineapples to the
company f.o.b. cars at Leilehua at $14 per ton, when, from
the geographical and physical conditions prevailing, which

are within the common knowledge of all, the expense of transportation alone would far exceed that amount. In this connection the rule of reasonableness of construction will apply the effect of which is that where the language of the contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred. See *Leschen & Sons Rope Co.* v. *Mayflower Gold Mining, etc., Co.*, 173 Fed. 855.

The contract before us is by no means without obscure, ambiguous and contradictory language, the meaning of which is susceptible of more than one construction. The construction thereof by the complainant, which has the adoption and approval of the court below, would make of it an unusual, unfair and improbable contract.

Complainant lays stress upon what it claims was the contemporaneous and mutual construction of the contract by the parties because Saito up to the end of January, 1918, sold and delivered to the company all of the pineapples which he had produced on all of his holdings at Leilehua, acquired both prior and subsequently to the date of the contract. Little weight can be attached to this circumstance when the facts are considered. It appears that on August 10, 1916, Saito borrowed from the company the sum of $6000 and executed a chattel mortgage covering all of the pineapples raised and produced or to be raised and produced by him upon virtually all of his holdings at Leilehua at that time and for the purpose of liquidating the mortgage indebtedness all of his pineapples were delivered to the company until the mortgage was finally paid in full on or about the tenth day of Septem-

ber, 1917; that between that date and the first of February, 1918, Saito sold and delivered to the company the remnants of his 1917 crop which amounted to only a small tonnage. Shortly following that date Saito, being out of debt to the company and no longer obligated to it except under his contract, entered into a contract with the respondent Libby, McNeill & Libby for the sale of the pineapples grown by him upon the premises acquired by him subsequently to the date of the contract with the company. Bearing these circumstances in mind and also in light of the fact that Saito is not conversant with the English language and that his negotiations and dealings with the company were carried on through the medium of a Japanese interpreter we are unable to give much force to the contention that there was a mutual interpretation of the contract in accordance with the present construction placed thereon by the complainant.

We are therefore of the opinion and hold that by the terms of the contract Saito is under no obligation to sell to the complainant pineapples produced from lands which were acquired after the contract was entered into.

The decree appealed from should be vacated and set aside, the injunction dissolved and complainant's bill herein dismissed, and the cause is therefore remanded to the court below for proceedings consistent with this opinion.

*U. E. Wild* and *E. C. Peters* (*Frear, Prosser, Anderson & Marx* and *Peters & Smith* on the brief) for complainant.

*J. W. Cathcart* and *B. S. Ulrich* (*Thompson & Cathcart* on the brief) for respondents.