EDWIN LEE JONES AND QUINTIN A. SWANSON DBA SWANSON & JONES TRUCKING COMPANY *v.* LEWIS L. JOHNSON AND SANECHIKA MIMURA ALSO KNOWN AS SONNY MIMURA, AS INDIVIDUALS AND DBA JOHNSON SOIL COMPANY, AN UNREGISTERED COPARTNERSHIP.

NO. 2932.

ARGUED FEBRUARY 9, 1956.          DECIDED MARCH 28, 1956.

TOWSE, C. J., STAINBACK AND RICE, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Plaintiffs, joint venturers in the trucking business in the City and County of Honolulu under the name of Swanson & Jones Trucking Company, filed suit against the defendants as individuals and as an unregistered copartnership, doing business as Johnson Soil Company, for breach of contract arising out of the alleged failure to deliver a trailer under agreement to rent such trailer for a period of six months beginning about April 1 or May 1, 1948.

The original contract was entered into orally in Honolulu on March 8, 1948, between plaintiffs and "John-

son Soil Company" in the presence of and with the consent and approval of both defendants. Two weeks thereafter it was reduced to writing and, as found by the trial judge, signed by defendant Johnson as "Johnson Soil Company" and plaintiffs Jones and Swanson in the presence of each other and in the presence of Mimura.

After the oral contract was entered into plaintiff delivered to Johnson, one of the defendants, in the presence of Mimura a check for $600 to the order of Johnson Soil Company for the rental of the trailer referred to in the contract. Mimura received the check from Johnson and used it to pay a debt owed by the Johnson Soil Company to the Pacific Iron Works, Ltd.

Several weeks after the contract of March 8, 1948, plaintiffs requested defendants to turn over to them the trailer pursuant to the contract, and went to defendants to take possession but defendants refused to make the trailer available to plaintiffs and plaintiffs never received it, nor did the defendants return the $600 paid by plaintiffs.

Plaintiffs sued for the $600 payment and claimed as special damages (frequently termed consequential damages) that by reason of the defendants' failure to turn over the trailer as agreed, they were unable to perform a contract with the Clarke-Halawa Rock Company for a period of six months beginning about April 1 or May 1, under which they would have made a profit of about $40 a day by hauling sand, using the trailer, from Nanakuli and Waianae Beach to the Clarke-Halawa plant at Red Hill; that the trailer would be attached to their truck-tractor for such purpose; further, that at the time of the making of the oral contract and the acceptance of the $600 check, defendants knew that plaintiffs intended to use the trailer in their contract with the Clarke-Halawa Rock Company and that plaintiffs would be unable to obtain another suitable trailer for such purpose, and in fact

plaintiffs were unable to obtain another suitable trailer to perform such contract with Clarke-Halawa Rock Company.

The case was tried jury waived and the trial judge found the allegations in plaintiffs' complaint were proved and assessed damages against the defendants in the sum of $5,200. From this the defendant Mimura comes to this court upon bill of exceptions. Johnson did not appeal.

The defendant Mimura claims plaintiffs failed to prove the existence of a partnership between Johnson and himself and, further, that even if the partnership existed "Johnson did not act within the scope of the partnership business in agreeing to lease the equipment so as to bind defendant."

There are certain other claims with reference to the admissibility of evidence regarding the partnership.

Other alleged error is that the plaintiffs cannot recover as damages the anticipated loss of profit from the hauling arrangement with Clarke-Halawa Rock Company.

There is not only ample evidence to sustain the finding of the trial judge that the partnership existed, but in fact the evidence is so conclusive that it would be difficult to see how the judge could have made any finding to the contrary. There was the direct testimony of the partner Johnson relative to the formation of the partnership with Mimura, the facts relative to the joint bank account, joint ownership of tractors and trailers, sharing of the profits and losses, a printed business card ("Johnson & Mimura Soil & Landscaping" etc.) which, the testimony shows, was prepared under Mimura's direction, the joint obligation paid with the check furnished by plaintiffs, Mimura's presence at the signing of the contract for the use of the trailer and his use of the money for payment therewith of a joint debt, his acquiescence in being introduced as a partner, the registration of the motor vehicles, etc. Accord-

ing to defendant Johnson a written partnership agreement was prepared by an attorney but Mimura, acting on advice of his attorney, refused to sign it, saying he and not Johnson was the only one who had any property and he alone stood to lose in case the partnership did not prosper. In other words, his only reason for not registering the partnership was that if the partnership succeeded he would share in the profits; if it failed he would escape its liabilities; a case of heads he wins but tails only Johnson, the other partner, loses.

The only other alleged error that merits discussion is the claim that the plaintiffs cannot recover damages for loss of anticipated profit from the hauling arrangement with the Clarke-Halawa Rock Company.

The general rule is that in an action for damages for breach of contract only such damages can be recovered as are the natural and proximate consequence of its breach; that the damages recoverable must be incidental to the contract and be caused by its breach; as the cases express it, "such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was entered into." (1 Sutherland, *Damages,* 4th ed., § 45, p. 170, citing cases.)

Direct damages are always recoverable but "consequential losses" must be compensated if it can be determined that the parties contracted with them in view.

In the contract for sale of property or rental of property, the ordinary rule is that the plaintiff can recover only the difference between the contract price and the price he is compelled to pay elsewhere. However, where there are special circumstances, damages may be recovered for foreseeable injury as a result of a breach of contract.

The leading case is *Hadley* v. *Baxendale,* 9 Exch. 341 (1854), where the following expression was used: "Where two parties have made a contract which one of them has

broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the same time they made the contract as the probable result of the breach."

Again, in 15 American Jurisprudence, *Damages,* section 52, page 454, after stating there are two rules in *Hadley* v. *Baxendale,* sets forth the second rule as follows: "(2) where there are special circumstances in the contract and its observance would take the contract out of the natural or usual course of things, damages which result in consequence of those special circumstances are recoverable if, and only if, those special circumstances were communicated or known to the party breaching the contract at the time he entered into the contract. [Citing authorities.]"

Also, in section 55, page 460, in discussing the collateral undertakings, American Jurisprudence, *Damages,* states as follows:

"Where, however, there are special circumstances known to a party at the time of making the contract from which it might reasonably be foreseen that his failure to perform will in turn cause a breach by the other party of a collateral contract made by him with a third person, and both contracts are in fact breached, the party breaking the first contract is liable to the other party for losses sustained by reason of his inability to carry out the collateral contract, including the loss of profits which would have accrued to him had he been able to perform it, expenses necessarily or reasonably incurred in connection with it, and also damages paid and expenses incurred in satisfying the other party to it * * *."

In discussing the rule in the *Hadley* v. *Baxendale* case, 1 Sutherland, *Damages,* fourth edition, section 50, page 188, states: "If it appear by such circumstances that the contract was entered into, and known by both parties to be entered into, to enable one of them to serve or accomplish a particular purpose, whether to secure a special gain or to avoid an anticipated loss, the liability of the other for its violation will be determined and the amount of damages fixed with reference to the effect of the breach in hindering or defeating that object."

Among the numerous cases cited was one where the plaintiff was a butcher and defendant had agreed to furnish him with the ice he might require for a season, knowing that the plaintiff needed the ice to preserve fresh meat. In the middle of the summer defendant stopped supplying ice and refused to furnish any more, in consequence of which plaintiff lost a large amount of meat. Plaintiff recovered for the loss of meat, the court stating: "As the defendant was acquainted with all the special circumstances in respect to this contract — knew for what purpose the ice agreed to be furnished by him was to be used, — he should fully indemnify the plaintiff for the loss he sustained by the non-delivery of the ice; and he was therefore justly chargeable in damages for the meat spoiled in consequence of the inability of the plaintiff to procure ice elsewhere."

Sutherland continued: "This case was not one of simple contract of sale. The special circumstances, known to both parties, made it more than that in its aims and consequences, although the terms in which it was made, considered alone, imported only a contract of sale. The vendor, knowing the purpose for which the ice was wanted, was held, by implication, to undertake to deliver it as agreed in order that the vendee should not suffer loss on his fresh meat from his inability to preserve it for want

of ice. Such being the contract, the loss which occurred from its breach was the direct consequence thereof."

In setting forth that the loss which occurred from a breach of the contract was a direct consequence thereof, the author states as follows: "It is to be observed that the implication from the vendor's knowledge of the special circumstances required the performance of no additional act to fulfill the contract. It merely enjoined on him the duty to perform it in view of more serious consequences than those which usually follow a vendor's default. The principle that the injured party is entitled to compensation proportioned to the actual injury is paramount, and overrides any rule not adapted to measure compensation in such a special case. The vendor is thus admonished that if he fails to deliver the property as agreed he cannot satisfy the injury to the vendee by paying the difference of a higher market price unless the article can be obtained in market; that the loss will be the value of the property which the ice was needed to preserve."

Where a contract provided the manufacturer should furnish, deliver and put into running order by a specified date machinery for a cotton-seed oil mill, parol evidence was received to show that time was of the essence of the contract and damages were allowed for the purchase of seed in advance of the date which was damaged by reason of the failure to deliver the machinery on time. (*Van Winkle* v. *Wilkins,* 81 Ga. 93.)

*Border City I. & C. Co.* v. *Adams,* 69 Ark. 219, is a case where damages were allowed for the increased cost of ice that the plaintiff had to buy from other parties and for the loss of profits he would have realized from his business from the time he was compelled to suspend the same because of inability to procure ice from any source.

The rule of *Hadley* v. *Baxendale* is discussed very fully in McCormick, *Damages,* sections 138-141 inclusive, and

many authorities are cited. The rule seems to be settled that losses must be either of the type usually resulting from the breach of like contracts or, if unusual, the circumstances creating the special hazard must have been communicated to the defaulter before he made the contract. "While it has occasionally been criticized, the acceptance in this country of the principle of Hadley v. Baxendale has been well-nigh universal by the courts, and it has found a place in some of the Codes." (McCormick, *Damages,* § 138, p. 566.)

The contention that it was error to allow oral evidence establishing the written agreement between the plaintiffs and the Clarke-Halawa Rock Company is without merit. See *Messmore* v. *New York S. & L. Co.,* 40 N. Y. 422, where it was held competent to prove an antecedent contract by parol proof to establish that the defendant was informed that the plaintiff made the contract in question with him with a view to performing the prior contract.

In the present case the trial judge found that the defendants knew of the use to be made of the trailer in hauling sand under a contract with the Clarke-Halawa Rock Company.

The Hawaiian decisions are in accord with the rule of *Hadley* v. *Baxendale.* See *Hawaiian Pineapple Co.* v. *Saito,* 24 Haw. 787, 788, where a portion of the syllabus states: "If the vendor has notice that his vendee has contracted to resell the article he will be held liable for loss of profits of such resale if he fails to fulfill his contract."

The contention that assuming a partnership existed Johnson's act in leasing the trailer was not within the scope of the partnership business so as to bind Mimura is of no weight whatever inasmuch as Mimura was shown to have been present and had full knowledge of and participated in the renting of the trailer and he himself received and utilized the check paid by plaintiffs for said purpose.

Every element of estoppel exists in his conduct. (40 Am. Jur., *Partnership*, §§ 146, 147, p. 234.)

Affirmed.

*Clarence Y. Shimamura* (also on the briefs) for Sanechika Mimura.

*Robert G. Hogan* (*Hogan & Dyer* on the brief) for appellee.