**Nasrollah MAGHSOUDI, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

**Civ. No. 79–0070.**

United States District Court, D. Hawaii.

June 1, 1979.

Kenneth G. K. Hoo, Fong, Miho & Robinson, Honolulu, Hawaii, for plaintiff.

Alexander C. Marrack, Hoddick, Reinwald, O'Connor & Marrack, Honolulu, Hawaii, for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

SAMUEL P. KING, Chief Judge.

On April 21, 1978, plaintiff Nasrollah Maghsoudi, a citizen of Hawaii, purchased an airplane ticket [hereinafter "ticket and baggage check"] from defendant Pan American World Airways, Inc., a New York corporation with its principal place of business in a state other than Hawaii, for around-the-world passage. On April 23, 1978, plaintiff departed from Honolulu for Tehran, Iran, with scheduled stopovers in San Francisco and London.

After spending four days in San Francisco, plaintiff went to the airport on April 27, 1978 to continue his journey. Plaintiff checked one suitcase containing two master tape recordings, clothing, and other personal effects and received one "baggage claim check" from defendant. The ticket and baggage check contained a written statement advising plaintiff that defendant's liability for loss of checked baggage was limited to $20 per kilogram;[1] however, neither plaintiff's ticket and baggage check nor his baggage claim check contained any information as to the weight of his luggage.

On April 28, 1978, plaintiff arrived at the London airport and went to the baggage claim area to retrieve his suitcase from defendant. Plaintiff could not find his suitcase and defendant was unable to locate it for him. After staying in London for as long as he could, plaintiff flew to Tehran, Iran. On May 13, 1978, plaintiff filed a claim for his missing suitcase at defendant's Tehran office by completing a "baggage claim blank" and surrendering his baggage claim check at defendant's request. Plaintiff's total claim of $6,190 was derived primarily from the loss of the two master tape recordings valued at $5,400.

Plaintiff subsequently received a letter from defendant dated September 26, 1978, again requesting his baggage claim check and also his ticket and baggage check. Plaintiff responded by sending copies of both his ticket and baggage check and his baggage claim blank to defendant. Plaintiff also informed defendant at this time that because the purpose of his trip was to take the master tape recordings to Iran for record production, the loss of his luggage had rendered the entire trip worthless and

---

1. The following limitation of liability appeared on a separate page of the ticket and baggage check:

NOTICE OF BAGGAGE LIABILITY LIMITATIONS

Liability for loss, delay, or damage to baggage is limited as follows unless a higher value is declared in advance and additional charges are paid: (1) for most international travel (including domestic portions of international journeys) to approximately $9.07 per pound ($20.00 per kilo) for checked baggage and $400 per passenger for unchecked baggage; (2) for travel wholly between U.S. points, to $500 per passenger on most carriers (a few have lower limits). Excess valuation may not be declared on certain types of valuable articles. Carriers assume no liability for fragile or perishable articles. Further information may be obtained from the carrier.

would require that he reproduce the tape and make another trip to Iran. Thus, plaintiff requested that his claim be settled for $6,190 plus another round-trip ticket to Iran.

Over two months later, plaintiff received a letter from defendant dated December 18, 1978 conceding the loss of plaintiff's suitcase accompanied by a check for $400 in total settlement of his claim. Defendant contended that the governing tariff for plaintiff's travel provided a maximum liability of $20 per kilogram for checked baggage lost or destroyed and that the weight of plaintiff's suitcase was 20 kilograms.

On January 24, 1979, plaintiff filed suit in state court alleging that defendant wrongfully or willfully allowed his luggage to be stolen or converted and negligently or willfully mishandled plaintiff's claim for reimbursement. Plaintiff prayed for damages in the amount of $192,790 as follows: $7,790 in actual damages; $10,000 in special damages; $50,000 for emotional distress and mental anguish suffered; $100,000 for lost income because the changed conditions in Iran have made the copying and distribution of plaintiff's tape impossible; $25,000 in punitive damages; and costs and attorney's fees. On February 13, 1979, defendant removed this action to this Court pursuant to 28 U.S.C. § 1441(a) on the basis of the diversity of citizenship jurisdiction of 28 U.S.C. § 1332(a)(1).

On April 11, 1979, plaintiff filed a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment in his favor as to the following issues: (1) Defendant is liable to plaintiff for damages sustained because of the loss of plaintiff's checked baggage; and (2) Defendant's liability is not limited to $20 per kilogram (or $9.07 per pound) of checked baggage weight. On May 18, 1979, defendant filed a memorandum in opposition to plaintiff's motion in which defendant conceded that it was liable to plaintiff for the loss of his suitcase. Defendant contended, however, that its maximum liability is limited by the Warsaw Convention to $20 per kilogram (or $9.07 per pound) of checked baggage weight or, in the alternative, that it is premature to determine whether or not the Warsaw Convention applies in this case.

I conclude that there is no issue as to any material fact regarding these issues and that plaintiff is entitled to partial summary judgment as a matter of law.

The Warsaw Convention[2] was drafted during the early days of international air travel.[3] Several countries "agreed to create a uniform body of law governing the rights and liabilities of passengers and air carriers in international air transportation" in order to furnish a more favorable climate for the growth of this budding industry.[4] Article 18 of the Warsaw Convention established a presumption of liability of the air carrier for destruction, loss, or damage to checked baggage.[5] This presumption of liability was offset by Article 22(2) which limits the air carrier's liability to 250 francs (or $20)

---

**2.** 49 Stat. 3000; T.S. 876; 49 U.S.C.A. § 1502.

**3.** The Warsaw Convention, officially entitled "Convention For the Unification of Certain Rules Relating to International Transportation by Air," was completed on October 12, 1929 and went into effect in the United States on October 29, 1934. *See id.; Dunn v. Trans World Airlines, Inc.*, 589 F.2d 408 (9th Cir. 1978), *rehearing and rehearing en banc denied*, January 23, 1979.

**4.** *Dunn v. Trans World Airlines, Inc.*, 589 F.2d at 410–11.

**5.** Article 18 of the Convention provides as follows:
 (1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
 (2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.

 . . . . .

Article 19 of the Convention further provides:
 The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods.

per kilogram of checked baggage weight.[6] Defendant contends that Article 22(2) governs in this case and limits its total liability to plaintiff.

 Plaintiff asserts that the express language of the Warsaw Convention provides that the liability limitations of Article 22(2) are inapplicable in this case. Article 4 of the Convention states:

(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

(2) The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.

(3) The baggage check shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The name and address of the carrier or carriers;

(d) The number of the passenger ticket;·

(e) A statement that delivery of the baggage will be made to the bearer of the baggage check;

(f) The number and *weight* of the packages;

(g) The amount of the value in accordance with article 22(2);

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less [sic] be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or *if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.* (Emphasis supplied.)

Both parties agree that neither plaintiff's ticket and baggage check nor his baggage claim check included any information regarding the weight of plaintiff's luggage.[7] Thus, the absence of this information prevents this Court from applying the relevant liability limitation of the Warsaw Convention without disregarding one of the treaty's express prerequisites for its application.[8] Furthermore, because the Warsaw

6. Article 22(2) provides:

 (2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. . . .

7. Plaintiff contended that defendant also violated Article 4 by failing to note the number of checked pieces of luggage on the ticket and baggage check. Defendant responded by arguing that the number of checked luggage pieces is designated by the number of baggage claim checks (i. e., a passenger receives one baggage claim check for each piece of luggage that he checks) and that both the ticket and baggage check and the baggage claim check must be considered together as the "baggage check" contemplated by Article 4(1). Although this Court finds defendant's argument persuasive in this context, it is of no help as a cure for the omission of the luggage weight on either the ticket and baggage check or the baggage claim check.

8. In an analogous situation, the Second Circuit refused to enforce the liability limitations of the Warsaw Convention for death and bodily injury suffered by passengers because the passengers' ticket and baggage checks did not contain information required by Article 3. *Lisi v. Alitalia-Linee Aeree Italiane*, 370 F.2d 508 (2d Cir. 1966). After quoting the relevant sections of Article 22, the Court stated:

 It is clear, however, that under the other Articles of the Convention, these limitations on liability are not applicable if the carrier fails to deliver to the passenger a ticket or a check for baggage. These Articles, moreover, provide that the ticket and check shall contain certain specified information, including "a statement that the transportation is subject to the rules relating to liability established by this Convention." Thus, it would appear that unless the carrier furnishes to the passenger a ticket or baggage check containing the appropriate statement, it may not restrict its liability as circumscribed by the Convention Articles.

*Id.* at 511 (footnotes omitted). The *Lisi* plaintiffs had a more sympathetic case because the

Convention was drafted with a bias in favor of the air carriers,[9] this Court is reluctant to ignore the clear language of the treaty in this case without a compelling justification for doing so.[10]

Defendant first contended that the omission of the weight is unimportant because it is irrelevant information. This contention is without merit. The maximum liability of the air carrier in this instance is a function of the weight of the checked baggage; thus, a passenger needs this information in order to determine whether or not he requires additional liability coverage.

Defendant then argued that it was not necessary for plaintiff to be given notice of the exact weight of the checked luggage because the maximum liability could be easily approximated by estimating the maximum weight of the suitcase. Defendant contended that the maximum liability could

not exceed $1,000 because it must be assumed that the lost suitcase was less than 50 kilograms.[11] The weakness of this argument is evident from a perusal of the history of this case. Defendant originally informed plaintiff that defendant's maximum liability was $400 because the weight of his suitcase was 20 kilograms.[12] Consequently, plaintiff's estimate of his liability coverage would have varied significantly depending upon the benchmark he chose for the maximum weight. Furthermore, plaintiff had no way of knowing whether the benchmark he chose would be acceptable to defendant. It is this type of uncertainty that the treaty's requirement for specifying actual weight was designed to avoid so that plaintiff could make a reasoned decision about taking protective measures against the limitation of liability.

---

omitted information more directly affected the sufficiency of notice to the passengers. Nevertheless, the logic of that case is equally applicable in the case at bar.

9. The *Lisi* court alluded to this bias in its analysis.

> The Convention's arbitrary limitations on liability—which have been severely and repeatedly criticized—are advantageous to the carrier. But the *quid pro quo* for this one-sided advantage is delivery to the passenger of a ticket and baggage check which give him notice that on the air trip he is about to take, the amount of recovery to him or his family in the event of a crash, is limited very substantially. Thus the passenger is given the opportunity to purchase additional flight insurance or to take such other steps for his self-protection as he sees fit.

370 F.2d at 512–13 (footnotes omitted).

10. The language of this treaty has been subjected to judicial interpretation in other cases. *Warren v. Flying Tiger Line, Inc.*, 352 F.2d 494 (9th Cir. 1965); *Mertens v. Flying Tiger Line, Inc.*, 341 F.2d 851 (2d Cir.), *cert. denied*, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965). Defendant also noted that the *Lisi* court itself found it necessary to engage in interpretation of the language of the treaty. The Court stated:

> It is apparent that Alitalia relies on a literal reading of the Convention for its assertions. We reject the interpretation it urges upon us. While it is true that the language of the Convention is relevant to our decision, it must not become, as Justice Frankfurter stated it, a "verbal prison."

370 F.2d at 511 (citations omitted).

Unlike the case at bar, the courts in these cases interpreted the treaty in *favor* of the passengers by refusing to enforce the liability limitations because the air carriers had failed to provide them with adequate notice of the applicability of these limitations. Defendant argues, therefore, that this Court should interpret the treaty *against* the passenger by applying the liability limitation because plaintiff was provided with adequate notice. *See* note 1 *supra*. Whether or not providing a passenger with the statement of the liability limitation but not the weight of his luggage is "adequate notice" within the rationale of this line of cases is arguable; nevertheless, a resolution of this issue is unnecessary because defendant has misread the teaching of these cases. The plaintiffs in these cases provided the courts with a compelling reason (*viz.*, lack of adequate notice) for adopting the construction of the treaty that they proposed instead of a literal reading of its language, and it is incumbent upon defendant to do the same herein.

11. Defendant's Memorandum in Opposition at 4. In oral argument defendant explained that 50 kilograms was chosen as a maximum weight because a heavier suitcase could not be lifted by a person lacking extraordinary strength.

12. Plaintiff's Memorandum in Support of Motion, Exhibit G. Defendant apparently chose 20 kilograms as the weight because that is the maximum weight for a piece of checked luggage that defendant would have accepted on plaintiff's flight without charging an additional fee.

■ Defendant's final argument is that to allow plaintiff to recover in excess of $100,000 for the loss of his suitcase because he did not receive a ticket and baggage check with the baggage weight listed on it would be "raising legal technicalities to the highest absurdity." [13] This argument misses the mark. The question presented herein is whether or not the artificially low liability limitations of the Warsaw Convention are applicable in this situation. By concluding that defendant may not avail itself of the liability limits, this Court is not holding that plaintiff is entitled to all the damages prayed for.

> Since [the Warsaw Convention] is a treaty, it is the supreme law of the land, preempting local law in the areas where it applies. . . . Thus, it would seem to follow that if the Convention "applies", it applies to limit—not eliminate—liability; if it does not apply, it leaves liability to be established according to traditional common law rules.

*Husserl v. Swiss Air Transport Company, Ltd.*, 351 F.Supp. 702, 706 (S.D.N.Y.1972), aff'd, 485 F.2d 1240 (2d Cir. 1973) (citations omitted). Thus, defendant can still rely on the traditional Hawaii common law rules of damages to circumscribe its liability in this case.[14] The application of the pertinent common law doctrines could drastically reduce defendant's liability to plaintiff herein.[15]

Defendant has failed to persuade this Court that it is appropriate to abrogate Article 4(4) of the Warsaw Convention by judicial interpretation in this instance. Therefore, plaintiff's motion for partial summary judgment should be GRANTED.

It is so ordered.

**13.** Defendant's Memorandum in Opposition at 2.

**14.** In diversity cases, a federal court must follow the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny and apply the substantive law of the state in which it is located.

**15.** The principles for the award of damages for breach of contract enumerated in *Hadley v. Baxendale*, 9 Exch. 341 (1854) and adopted by the Supreme Court of Hawaii in *Jones v. Johnson*, 41 Haw. 389, rehearing denied, 41 Haw. 651 (1956) are applicable in this case for determining whether most of the consequential damages are recoverable.

> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the same time they made the contract as the probable result of the breach.

41 Haw. at 393–94; accord, *Hawaiian Pineapple Co. v. Saito*, 24 Haw. 787, 793–94 (1919), aff'd, 270 F. 749 (9th Cir. 1921). The second rule of *Hadley v. Baxendale* states that:

> Where there are special circumstances in the contract and its observance would take the contract out of the natural or usual course of things, damages which result in consequence of those special circumstances are recoverable if, and only if, those special circumstances were communicated or known to the party breaching the contract at the time he entered into the contract.

*Jones v. Johnson*, 41 Haw. at 394 (quoting 15 Am.Jur., *Damages*, § 52 at 454).

Plaintiff's ability to recover damages for such items as lost income is further constrained by the requirement that "[t]he extent of plaintiff's loss must be shown with reasonable certainty and that excludes any showing or conclusion founded upon mere speculation or guess." *Uyemura v. Wick*, 57 Haw. 102, 111, 551 P.2d 171, 177 (1976) (quoting *Ferreira v. Honolulu Star-Bulletin*, 44 Haw. 567, 576, 356 P.2d 651, 656, rehearing denied, 44 Haw. 581, 357 P.2d 112 (1960)).