RODNEY SIU HUNG BOW, Plaintiff-Appellant, *v.* ROBERT SHIGERU NAKAMURA, GAYLE CHANG NAKAMURA, DIANNE LYNN YEE LEE, and DENNIS STUCKEY, Defendants-Appellees

NO. 10624

(CIVIL NO. 68396)

MAY 13, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiff Rodney Siu Hung Bow (Plaintiff) appeals the trial court's judgment that Defendants Robert Shigeru Nakamura and Gayle Chang Nakamura (collectively Nakamuras), and Dianne Lynn Yee Lee (Lee)

(hereafter Nakamuras and Lee are collectively referred to as Defendants)[1] are not liable for consequential damages for the expenses incurred by Plaintiff under his agreement of sale. We affirm.

## STATEMENT OF FACTS

On May 31, 1977, Plaintiff entered into an agreement of sale (A/S) to purchase a condominium apartment from Cooke-Amfac Joint Ventures (Cooke-Amfac). Under a "subsidy program" in the A/S, Cooke-Amfac agreed to pay on behalf of Plaintiff the lease rent, property tax and condominium common area expenses up to August 31, 1978. Thereafter, the A/S allowed Plaintiff to elect to have Cooke-Amfac continue to make those payments until August 31, 1981, when the full purchase price was due. Plaintiff elected to defer the payment of those items after August 31, 1978. The payments made by Cooke-Amfac after August 31, 1978, together with interest, were to be added to the balance due on the A/S. In the event of Plaintiff's default on the A/S, Cooke-Amfac could elect to have Plaintiff reimburse it for all the amounts paid by it under the subsidy program.

On July 10, 1980, Plaintiff and Lee alone entered into a Deposit Receipt, Offer and Acceptance (DROA) agreement for Lee to purchase the apartment from Plaintiff by way of an "agreement of sale." The DROA established the method of payment of the $67,000 purchase price as follows: $5,000 cash; "$62,000 by way of agreement of sale of $62,000, at 6.2% simple interest on monthly unpaid balance; total amount due no later than Aug. 30, 1981. Monthly payments of $442.00 or more to be applied to property taxes, least [sic] rent, maint. fee then to interest and balance to principal if any." As a special condition, the DROA provided, "[i]f property taxes, lease rent, maintenance fee increase, buyer to increase his monthly payments proportionaly [sic]."

A sub-agreement of sale (sub-A/S) was prepared by Lee and on November 1, 1980, it was executed by Plaintiff and Defendants. The sub-A/S contained the same payment terms as the DROA except for the special condition. However, Defendants paid only $318.33 per month

---

[1]Plaintiff's suit also included a claim against Defendants Diane Lynn Yee Lee (Lee) and Dennis Stuckey (Stuckey) on another transaction. The judgment against Lee and Stuckey on that claim was not appealed.

on the sub-A/S, although the sub-A/S was never amended to authorize the lower payment. The deficiency of $123.67 per month in the payments required by the sub-A/S represented the deferred payments under Plaintiff's A/S. Defendants failed to pay the monthly installment after July 1, 1981, and failed to pay the balance as agreed under the sub-A/S.

On November 25, 1981, Plaintiff filed a complaint to cancel the sub-A/S, for a writ of possession, and for damages. In his complaint, Plaintiff alleged that $62,000.00 was due from Defendants on the sub-A/S, "together with interest, plus all advances, costs, expenses, attorney's fees and other amounts due under said Sub-Agreement of Sale." He prayed that the sub-A/S be cancelled, that he be allowed to retain the sums paid by Defendants as damages, and that he be awarded "all delinquent interest together with costs, advances, expenses, costs and attorney's fees[.]" In the alternative, he asked for judgment in the amount of $62,000.00, "together with interest, advances, expenses, costs and attorney's fees[.]" The sub-A/S was ordered cancelled by stipulation of the parties, and on March 15, 1982, Plaintiff regained possession of the apartment. Plaintiff was unable to perform his A/S with Cooke-Amfac, and Cooke-Amfac took possession of the apartment from him.

On December 26, 1984, after a bench trial, Plaintiff was awarded $6,939.03[2] in damages from Defendants for breach of the sub-A/S. On January 7, 1985, Plaintiff moved to alter or amend the trial court's "findings" to award him interest on the amounts due from Defendants and reimbursement of the amounts he was required to pay to Cooke-Amfac on account of his breach of the A/S. The motion was denied and Plaintiff appealed.

I.

Initially, Defendants argue that this court lacks appellate jurisdiction because Defendants were not personally served with the notice of appeal, and Plaintiff's opening brief was served more than 40 days after

---

[2]When Cooke-Amfac retook the apartment, it credited Plaintiff with $57,500, the value of the apartment on August 31, 1981, towards the purchase price. The trial court deducted that $57,500 from the $62,000 unpaid on the sub-A/S and added to that result the amount of $2,439.03, which is the total of the unpaid portions of the monthly installments under the sub-A/S.

the filing of the appeal, in violation of Rule 28(b), Hawaii Rules of Appellate Procedure (HRAP) (1985). The argument is without merit.

First, the certificate of service, attached to the notice of appeal filed on May 8, 1983, shows that a copy of the notice of appeal was sent to Defendants' trial counsel of record. Moreover, Rule 3(e), HRAP (1984), provides that the clerk of the court appealed from shall serve notice of the filing of a notice of appeal upon counsel of record for each party by mail. The failure of the clerk to do so does not affect the validity of the appeal. Second, the 40th day after the filing of the record on appeal was a Sunday. The opening brief was filed the following Monday in accordance with Rule 26(a), HRAP (1984). Moreover, the late filing of an opening brief does not affect the validity of an appeal. Rule 3(a), HRAP (1984). We have jurisdiction.

II.

Plaintiff contends on appeal that because Defendants defaulted on the sub-A/S, he was unable to perform his A/S with Cooke-Amfac and was required to reimburse Cooke-Amfac for the subsidies and pay the deferred payments and interest, advances, and attorney's fees accrued through November 1982, a total of $16,174.93.[3] In essence, he contends that the lower court erred in not holding Defendants liable to him in that amount as consequential damages arising from his collateral contract with Cooke-Amfac. We disagree.

The general rule is that in an action for damages for breach of contract only such damages can be recovered as are the natural and proximate consequence of its breach; that the damages recoverable must be incidental to the contract and be caused by its breach; as the cases express it, "such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was entered into." (1 Sutherland, *Damages,* 4th ed., § 45, p. 170, citing cases.)

---

[3]Although Plaintiff asserts as a point on appeal that the trial court erred in denying his motion to alter or amend the findings of fact, he has presented no argument in support of his contention either in the briefs or at argument. He is deemed to have abandoned that contention. *Rosa v. Johnston,* 3 Haw. App. 420, 651 P.2d 1228 (1982).

*Jones v. Johnson,* 41 Haw. 389, 393 (1956). Thus, direct damages flowing from the breach are always recoverable, but consequential losses can only be recovered "if it can be determined that the parties contracted with them in view." *Id.* The court in *Jones* quoted 15 Am. Jur. *Damages,* which points out that *Hadley v. Baxendale,* 9 Exch. 341 (1854), established the rule that

> where there are special circumstances in the contract and its obser-
> vance would take the contract out of the natural or usual course of
> things, damages which result in consequence of those special circum-
> stances are recoverable if, and only if, those special circumstances
> were communicated or known to the party breaching the contract at
> the time he entered into the contract. [Citing authorities.]

*Id.* at 394.

In *Jones,* the defendants agreed to rent a trailer to the plaintiffs for six months, but failed to deliver the trailer. The court found that the defendants knew at the time they engaged in their contract that the plaintiffs were going to use the rented trailer to haul sand under a collateral contract with Clarke-Halawa Rock Company. Thus, the court held the defendants liable not only for the direct damages caused by defendants' failure to deliver the trailer, but they were also liable for the consequential damages of lost profits from the plaintiffs' collateral contract with Clarke-Halawa Rock Company.

In the instant case, when the DROA was signed, Lee was bound to sign an "agreement of sale" containing the terms and conditions provided for in the DROA. *See Francone v. McClay,* 41 Haw. 72 (1955). The evidence is conflicting whether Lee was aware of the A/S when she signed the DROA, although the trial court found she was aware of it when she prepared the sub-A/S. In our view, the critical inquiry is whether Lee was aware of the A/S at the time of the execution of the DROA and whether she was aware that, if she did not perform the terms set forth in the DROA, Plaintiff would be unable to perform his obligation to Cooke-Amfac. Although Plaintiff argues that Lee knew of his A/S with Cooke-Amfac, Plaintiff has not directed us to anything in the record indicating that Lee was aware at that time of the consequences that would flow from her breach.

The situation here is different from *Jones, supra,* because in *Jones* the agreement between the parties was for the specific purpose of affording Jones the opportunity to perform his collateral contract. Plaintiff has failed to prove that Defendants' default here was the "but

for" of Plaintiff's damages. Although the "subsidy program" of Plaintiff's A/S with Cooke-Amfac was unusual, there is nothing about the transaction between Plaintiff and Defendants which is out of the ordinary so as to create liability on Defendants' part to compensate Plaintiff for his losses under the A/S. We find nothing in the circumstances of this case to remove it from the rule of *Hadley v. Baxendale, supra.* The cases of *Borton v. Medicine Rock Land Company,* 275 Ore. 59, 549 P.2d 1122 (1976); and *Senior Estates, Inc. v. Bauman Homes, Inc.,* 272 Or. 577, 539 P.2d 142 (1975), cited by Plaintiff, are clearly distinguishable from this case. Thus, Plaintiff is entitled only to those damages arising under his sub-A/S with Defendants.

### III.

Plaintiff argues that the trial court should also have allowed him to recover the broker's commission, and the attorney's fee and escrow fees credited to Lee in closing the transaction. We disagree.

Plaintiff's opening brief is in violation of Rule 28(b)(4)(C), HRAP, because he has not quoted the pertinent challenged findings of fact in his points on appeal, and has not included a statement explaining why the findings are alleged to be erroneous. However, it is clear from his argument that he is attacking the trial court's findings of fact nos. 8, 9, and 10, in which the trial court found that Lee undertook to act as attorney in preparing the sub-A/S, as escrow in processing the transaction, and as broker for the "Sub-Purchaser." Plaintiff contends that since Lee denied she acted as attorney, as escrow, or as a broker, the court's findings are clearly erroneous. However, the other evidence in the record clearly supports the court's findings. The weight and credibility of the evidence is for the trial court to determine and that determination will not be disturbed on appeal. *Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw. App. 265, 630 P.2d 642 (1981). Obviously, the trial court gave little or no weight to Lee's protestations.

Affirmed.

*Richard F. Dvonch* for plaintiff-appellant.

*Dianne Lynn Yee Lee* for defendants-appellees.