Charles R. Rubin, J.
In an action brought to recover damages for personal injuries allegedly resulting from an airline hijacking which occurred when the infant plaintiff was a passenger in defendant’s airplane while upon an international flight, plaintiffs move for summary judgment on the issue of liability alone and ordering a trial on the issue of damages.
The infant plaintiff (hereinafter plaintiff) was en route home to New York, upon a round-trip ticket for air transportation between New York and Tel Aviv, when the subject plane was hijacked on September 6, 1970 after an intermediate stop at Frankfurt, Germany, by armed members of the Popular Front for the Liberation of Palestine and was diverted to a desert location outside Amman, Jordan, where it remained until September 12,1970 with the plaintiff and other passengers held on board as captives of the terrorist group.
As a result of being captive for seven days plaintiff asserts she suffered extreme fright and loss of weight and also developed a skin rash.
Defendant concedes that liability to the plaintiff under the Montreal modification of the “Warsaw Convention” would *643 have arisen “ had one of the hijackers shot or physically injured Miss Herman during the course of the flight ” (emphasis supplied). However, defendant in effect contends that plaintiff’s injuries resulted “ entirely from mental anguish and distress,” rather than from any physical assault by the hijackers, and as such would not be compensable. Defendant also contends that plaintiff’s injuries were not sustained while in flight but rather while the plane was grounded.
Defendant on May 10,1966 agreed to the terms of the Montreal modification making the “limit of liability for each passenger for death, wounding or other bodily injury ” $75,000 and depriving defendant “ of any defense under Article 20(1) of said Convention” (emphasis supplied). Subdivision (1) of article 20 provided that the “ carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage ” (49 U. S. Stat. 3000, 3019).
Five days prior thereto, on May 5, 1966, the United States Department of State had issued a document describing the proposal for limiting liability to $75,000 and for absolute liability on the part of the carriers wherein it was stated: “ In essence, absolute liability in this context means that a claimant would not be required to prove fault on the part of the carrier, but only the amount of his damages. Claimant would be able to recover the amount of his provable damages, though subject to a maximum limitation of $75,000.” (32 Journal of Air Law and Commerce, p. 245; emphasis supplied).
The Subcommittee of the Legal Committee of the International Civil Aviation Organization (ICAO), which was instrumental in the adoption of the system of absolute liability under the Montreal Agreement (see 80 Harv. L. Rev. 497, 587 et seg.) prepared a detailed “Note on System of Absolute Liability” under the Montreal Agreement, also referred to as the IATA Agreement (see 80 Harv. L. Rev. 596), at meetings held in 1968-1969, wherein the scope and the effects of application of the IATA Agreement in different situations appear to be as follows:
“ (f) In the case where a passenger was killed or injured by the wilful act of a third party then, under the IATA Agreement, the carrier shall be absolutely liable with regard to all claims for death or injury of passengers except a claim brought by the wrongdoer * * *.
“ (h) In the case of an accident resulting from an act of God * * * where it was impossible for the carrier to avoid the damage * * * he would be liable according to the *644 IATA Agreement (note I) * * * including, it seems, where a passenger died from natural causes it being merely a coincidence that he happened to be on board the aircraft at that time.” (Emphasis supplied).
Prior to the adoption of the absolute liability concept, the proponents had argued that the ‘ ‘ question for purposes of compensation * * ' * should not be one of ‘ right or wrong ’ but rather who could best bear or distribute the loss. ” (80 Harv. L. Rev. 559). Also, “ increasingly we have come to recognize that in complex largescale operations, liability regardless of fault on the whole serves better the various ends of the law of liability *- * *. As between the victim and the carrier, loss can better be borne by the carrier who can distribute the loss, or bear the insurance to cover it, as cost of operation.” (p. 560).
In the court’s view the defendant has not substantiated either of the two contentions it asserts in opposition to the motion.
Defendant contends that plaintiff’s Alleged injuries do not fail within the article 17 (Warsaw Convention) definition of personal injuries. Preceded by the headnote 11 Personal injuries, etc.” article 17 reads: “ The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.” (49 U. S. Stat. 3018; emphasis supplied).
Defendant argues that the words ‘ ‘ or any other bodily injury ’ ’ were intended to limit the three preceding words ‘ ‘ death or wounding.” But the defendant offers no substantiating authority for so restricting the meaning of either the words or of the descriptive headnote: ‘‘ Personal injuries, etc.” Defendant’s cited cases are distinguishable on the facts, particularly the fact that none of them involve a trauma resulting from the infliction of an intentional tort directly upon the person of the injured person.
Furthermore, it would appear that the words used in the official text of the Warsaw Convention, written in the French language, to describe the phrase “ or any other bodily injury ” may not be construed to limit the injury to a “ wounding.” The translation of the French word “ blessure ’’into English also connotes the broader meaning of “hurt” or “ injury ” in addition to ‘ ‘ wound ” (see Vocabulary of Legal Terms and Phrases by Jules Jeraute).
Similarly, the French word ‘ ‘ lesion, ’ ’ translated into “ injury ” in the English phrase “ or any other bodily injury,” *645 may also be understood to refer to “damage,” “prejudice,” “wrong,” or “hurt” (see Vocabulary of Legal Terms and Phrases by Jules Jeraute).
It is defendant’s other contention that the “fright and distress ’ ’ which plaintiff experienced during the week ‘ ‘ when its aircraft was used, without its consent, as a detention camp ” occurred after the flight had terminated. Defendant’s cited case is of no aid to defendant’s position herein as the passenger in the cited case had been injured after disembarking from the plane upon arrival at the agreed point of destination, though waiting to pick up baggage at the airport.
It is the court’s opinion that, since the plaintiff’s damage was sustained both while on board the aircraft during flight (when the hijacking commenced) and while physically still on board during the subsequent week of detention in the desert (while the hijacking was still in progress), the plaintiff has demonstrated compliance with the provision of article 17 of the Warsaw Convention that “ the accident (hijacking) which caused the damage so sustained took place on board the aircraft.”
In the court’s opinion the defendant has no defense to the liability imposed upon it under the Warsaw Convention, as modified by the Montreal Agreement, to the extent of plaintiff’s ‘1 provable damages ’ ’, for injuries resulting from the intentional tort committed upon the person of the plaintiff when, while a passenger in flight on board defendant’s airplane, she was held in close confinement by armed hijackers both while the plane was in flight and thereafter while the plane was grounded until she was released seven days later after the hijackers had destroyed the airplane.
Motion granted.