Greta **HUSSERL**, Plaintiff,

v.

**SWISS AIR TRANSPORT COMPANY, LTD.**, also known as Swissair, Defendant.

No. 71 Civ. 3515 **HRT**.

United States District Court, S. D. New York.

Feb. 10, 1975.

1240

Gewurz & Gewurz, Bellmore, N.Y., for plaintiff by Eric Gewurz, Bellmore, N.Y.

Condon & Forsyth, New York City, for defendant, by George N. Tompkins, Jr., and Ronald E. Pace, New York City.

## OPINION

TYLER, District Judge.

This suit is a diversity action for $75,000 for bodily injury and mental anguish allegedly caused by the hijacking of one of defendant's airplanes to a desert area near Amman, Jordan, on September 6, 1970. In an earlier opinion, this court denied a motion by defendant Swissair for summary judgment and dismissal of the complaint. That motion was made on the grounds (1) that, at least in the instant, factual context, the Warsaw Convention [1] and special contract provisions contained in tariffs filed by the airlines with the Civil Aeronautics Board [2] exclusively govern any legal claim asserted by a passenger in international transportation against the carrier; (2) that a hijacking is not an "accident" [3] within the meaning of the Warsaw Convention; and (3) that, since the Convention only provides that the carrier shall be liable when the injury is caused by an "accident", the carrier could not be liable in the instant, factual context. This court denied the motion because it decided that a hijacking is an "accident" within the meaning of the Convention. Husserl v. Swiss Air Transport Co., Ltd., 351 F.Supp. 702 (S.D.N.Y.1972), aff'd, 485 F.2d 1240 (2d Cir. 1973). There being no reason to decide the issues raised by the first and third grounds, the court did not do so. The opinion, however, suggested that at least one other phrase from the relevant provisions of the Warsaw Con-

---

1. 49 Stat. 3000 et seq.

   The Warsaw Convention is officially entitled "Convention for the Unification of Certain Rules Relating to International Transportation by Air." The United States deposited its declaration of adherence at Warsaw, Poland, July 31, 1934, and the treaty was proclaimed October 29, 1934. [Hereinafter referred to as "Convention" or "treaty".]

2. The United States became dissatisfied with the low level of liability provided for by the Convention and noticed its denunciation on November 15, 1965, to become effective on May 15, 1966. 53 Dept. State Bull. 923 (no. 1380, Dec. 6, 1965). However, before the denunciation became effective, it was withdrawn. The reason for the latter action was that an interim arrangement was approved. This interim arrangement provided that the airlines would file tariffs (see 31 Fed.Reg. 7302 [no. 97, May 19, 1966]) with the CAB raising the limit of liability and waiving the defenses allowed by Article 20(1) of the Convention. The interim agreement and the changes it wrought have been termed the "Montreal Agreement." For a more complete discussion see Lowenfels, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497 (1967) [hereinafter cited as "Lowenfels I"]. See also Husserl v. Swiss Air Transport Co., Ltd., 351 F.Supp. 702, n. 1 at 703 (S.D.N.Y.1972). Hereinafter the Warsaw Convention as modified by the Montreal Agreement will be referred to as the "Warsaw system."

3. Defendant argued, unsuccessfully, that the phrase "if the accident which caused the damage" in Article 17 precluded recovery in the instant case since a "hijacking" was not an "accident". It might be noted that, even if defendant had prevailed in its argument that a "hijacking" is not an "accident", it still would not have demonstrated that recovery was precluded. See Section I, *infra*.

vention might raise a controlling issue of interpretation.

Resolution of that issue and of the other issues previously raised but not decided is the object of defendant Swissair's current motion for summary judgment and dismissal. The case is in essentially the same factual posture as it was when the earlier motion was decided.

The facts of the hijacking itself are uncontested. On September 6, 1970, in Zurich, Switzerland, plaintiff Husserl boarded defendant's direct flight to New York. Unfortunately, shortly after takeoff, an Arabian terrorist group hijacked the airplane and directed the pilot to fly to a desert area near Amman, Jordan. The passengers were forced to stay on the plane for approximately 24 hours under circumstances less than ideal for physical or mental health. Plaintiff and other women and children were then moved to a hotel in Amman where they remained until September 11, 1970, at which time plaintiff and other passengers were flown to Nicosia, Cyprus. The following day they were flown back to Zurich; and, finally, on September 13, 1970, they were flown to New York, the original destination.

Plaintiff alleges that, from the time the terrorists took control of the aircraft until she was liberated and returned to Zurich, she suffered "bodily injury and severe mental pain and anguish resulting from her expectation of severe injury and/or death, all of which will have permanent effects on the plaintiff." Complaint, ¶ 10. Plaintiff contends defendant is liable for damages under the Warsaw system, contract law, and/or tort law.

■ Neither the complaint nor plaintiff's deposition indicates that she was injured by the impact of any physical object on her body. But she does contend that the mental trauma of the hijacking experience, apparently including to some extent the detention in Amman and the trip back to Zurich, caused various mental and psychosomatic injuries, at least some of which involve demonstrable, physiological manifestations. For purposes of this motion, the court must accept these allegations and contentions in the light most favorable to plaintiff and, therefore, puts aside its substantial doubt that plaintiff will be able to prove both injury and causation.[4]

The grounds of the instant motion are the same as those of the earlier motion except with respect to the particular phrase of the Warsaw Convention which is at issue. Swissair contends: (1) that the Warsaw system provides the exclusive relief available for an injury sustained in international transportation and that, if the Convention does not explicitly specify relief for a certain type of injury, then it precludes any relief for that type of injury; (2) that the phrase "death or wounding . . . or any other bodily injury", as used in Article 17 of the Convention (full text, Section I *infra*), does not include the type of mental injury allegedly suffered by plaintiff; and (3) that, therefore, plaintiff cannot recover in the instant, factual context. Plaintiff, of course, disagrees with each contention. For the reasons enumerated and explicated hereafter, this court concludes that Swissair is not entitled to judgment as a matter of law on the grounds it asserts and that there are material issues of fact which are not resolved on the present record.

■ The legal premises for this ruling are (1) that the Warsaw system specifies the exclusive relief available

---

4. This opinion will make clear that the carrier is presumed liable for an injury if it is comprehended by the Convention (Section I) and if the otherwise applicable law provides an appropriate cause of action (Section III). However, for the injury to be comprehended by the Convention, it must have been proximately caused by an "accident" (Article 17). Hence, to establish liability, plaintiff must prove proximate causation. Cf. MacDonald v. Air Canada, Inc., 439 F.2d 1402 (1st Cir. 1971). Furthermore, to recover damages plaintiff must prove her actual injuries and their worth.

for a certain type of injury sustained in international transportation if and only if the types of injuries described in Articles 17, 18 and 19 include the type of injury alleged and (2) that the phrase "death or wounding . . . or any other bodily injury", as used in Article 17, does comprehend mental and psychosomatic injuries. While it is true that only the latter of these premises needs be established to dispose of the motion, it would be imprudent not to establish the first as well; the issues involved have been briefed and argued thoroughly, will have to be decided somtime, are integrally connected with the interpretation of the phrase at issue and with the other issues raised by defendant's motion, and are, therefore, most appropriately and efficiently resolved now. Unfortunately, even the establishment of these two premises is insufficient to support the conclusion that plaintiff has a claim for relief which could definitely withstand any motion to dismiss or for summary judgment. More will be heard of these disheartening problems in Section III, *infra*. Suffice it to say here that they are all related to the well-established and sometimes criticized principle of law that the Warsaw system does not create any claim for relief but, in the instant, factual circumstances, merely (1) creates a presumption of liability if the otherwise applicable substantive law provides a claim for relief based on the injury alleged, and (2) establishes a maximum limit on the potential liability to which a carrier might be subject for an injury caused by an accident in international transportation.

## I. *Exclusive Relief*

Subsection (1) of Article 1 of the Convention provides, in relevant part: "This convention *shall* apply to *all* international transportation of persons . . . performed by aircraft for hire" (emphasis added). Clearly Husserl was a person in "international transportation", as that phrase is defined in Article 1(2); and, since the Warsaw Convention is a treaty to which the United States has adhered, it is the supreme law of the land and is, by its terms, applicable to this case. The parties do not dispute this point. However, they do disagree on whether the Convention applies exclusively and precludes alternative causes of action not based on the treaty.

Defendant contends that the treaty is the only law applicable: (1) because it is the supreme law of the land and overrides any contrary state constitution, law, or policy; (2) because Article 24 of the Convention provides that certain actions for damages " . . . can only be brought subject to the conditions and limits set out in this convention"; (3) because the legislative history demonstrates that its drafters intended the Convention to provide the exclusive remedy for any injury; (4) because case law precedent has established that the provisions of the Convention exclusively govern the rights and liabilities of the parties; and (5) because the expressed purpose of the treaty is to regulate "in a uniform manner the conditions of international transportation by air in respect of . . . the liability of the carrier." On the other hand, plaintiff argues that, since the Convention merely creates a presumption and a limitation of liability but not a right of action, she may assert causes of action based on negligence and breach of contract in the alternative to a cause of action which invokes the Convention's presumption of liability.[5] Apparently, plaintiff opposes the motion on the further alternative theory that her injury can be traced back to the negligence of the carrier which occurred before embarkation and which is, therefore, not covered by the Convention, or that Swissair breached its implicit contractual duty to transport Husserl safely to her destination, which duty was presumedly created before em-

---

5. It is undisputed that Convention Articles 17, 18, and 19 establish a presumption of liability for different types of injury.

barkation and which breach is, therefore, not covered by the Convention. Unfortunately, nowhere does plaintiff directly address or respond to the issue of exclusive remedy raised by defendant. In fact, to a large extent, this court is able to agree with most of the propositions advanced by each side; the difficulty is that these propositions are advanced by counsel so as to side-slip one another.

Those sections of the treaty most relevant to the exclusive relief issue are the preamble, Article 1, and Chapter III. The preamble clearly articulates that the purpose of the Convention is to regulate "in a uniform manner the conditions of international transportation by air in respect of . . . the liability of the carrier." Article 1 provides that the Convention shall apply to all international transportation, and Chapter III governs the liability of the carrier.

When the Convention was drafted in the late 1920's, the international air transportation industry was an infant; but various sovereignties saw great potential in it and wished to nurture its development. To effect this end, their plenipotentiaries met to agree on some uniform, international system which would provide a favorable environment for the industry's growth. The potentially destructive liability to which a carrier might be subject for an air disaster was perceived as an impediment to growth. See Lowenfels, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497, 499–500 (1967) [hereinafter cited as "Lowenfels I"] and authorities cited therein. Hence, the drafters of the treaty proposed to limit liability for injuries caused by air accidents. However, they did not wish to unfairly prejudice the claim of a traveler who was willing to accept the considerable risks of air transportation, so

they proposed a presumption of liability on the part of the carrier to offset the limitation of liability. See Lowenfels I at 499–500 and authorities cited therein. See also Articles 17, 18, 19 and 23. These proposals became a part of the treaty to which the United States adhered in 1934.

Since that time the international air transportation industry has grown and has become quite safe. As a result of this growth and other developments, various modifications of the treaty have been suggested. See Lowenfels I. By 1965, the United States was ready to denounce the treaty because the limitation of liability was too low. See Lowenfels I at 546–52. Before the denunciation became effective,[6] however, the carriers agreed to a provisional arrangement, see note 2 *supra,* whereby they waived the defenses provided by Article 20(1)[7] of the Convention and accepted an increase in the limitation of liability to $75,000.

Although the original motivation for establishing the international agreement no longer exists, it is clear beyond peradventure that the High Contracting Parties (the Convention's designation for signatories) still adhere to the treaty's express purpose; uniformity with respect to the liability of the carrier is still desired, if for reasons somewhat different from the motivating ones. See Lowenfels I. There can be no question that this uniformity was and is intended to result from a limitation on and a presumption of liability. It seems implicit in these indisputable propositions that the purpose of the Warsaw system and the intent of its drafters, see, e. g., comments of Sir Alfred Dennis of Great Britain, Warsaw Minutes at 140, must also have been to establish the exclusive relief available for damages resulting from an injury sustained in international transportation. Manifestly, if an in-

---

6. Article 39 provides that "[d]enunciation shall take effect six months after the notification of denunciation . . . ."

7. "Article 20(1) The carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures."

jury subject to the presumption and limitation of liability provisions of the treaty could give rise to another claim not subject to those provisions, uniformity with respect to liability would not result and the treaty's purpose would be defeated.

To avoid this latter problem, the drafters explicitly made the conditions and limits established by the Convention exclusively applicable to certain actions for damages based on the enumerated types of injury.

### Article 24

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply . . . .

Articles 17, 18 and 19 establish the presumption of liability for damages arising from injury to persons or to property or arising from delay. Article 17 is the only one which deals with personal injuries other than delay [8] and, hence, is the article which may be applicable to this case.

### Article 17

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.[9]

Assuming for the present that plaintiff's claim is "covered" by Article 17, Article 24 clearly excludes any relief not provided for in the Convention as modified by the Montreal Agreement. It does not, however, limit the kind of cause of action on which the relief may be founded; rather it provides that any action based on the injuries specified in Article 17, "however founded", i. e., regardless of the type of action on which relief is founded, can only be brought subject to the conditions and limitations established by the Warsaw system. Presumably, the reason for the use of the phrase "however founded" is twofold: to accommodate all of the multifarious bases on which a claim might be founded in different countries, whether under code law or common law, whether under contract or tort, etc.; and to include all bases on which a claim seeking relief for an injury might be founded in any one country. In other words, if the injury occurs as described in Article 17, any relief available is subject to the conditions and limitations established by the Warsaw system, regardless of the particular cause of action which forms the basis on which a plaintiff could seek relief. Hence, Husserl's alternative causes of action sounding in tort and in contract are perfectly proper; but the Warsaw system's conditions and limitations apply to them. Indeed, the "alternative" to the Warsaw Convention claim is not really "alternative" at all, as is explicated in Section III of this opinion.

■ It makes no difference that the negligence occurred or that the contract was formed prior to embarkation, for Article 17 refers to the place in which the accident causing injury must take place in order for that article to cover the case and establish the presumption of liability for the injury. The actual, ultimate cause of the accident is irrelevant for purposes of Article 17; and the particular cause of action on which recovery for an injury is based is likewise irrelevant, except as explained in Section III *infra*. As long as the accident which caused the injury

---

8. Delay injuries could conceivably be characterized as either personal or property injuries. The drafters avoided confusion on this point by dealing with such injuries in a separate article.

9. The original and official version of the Convention is in French. But, as explained *infra*, the common meaning of the relevant phrases is what is important; and it is the same in both languages.

"took place on board the aircraft or in the course of any of the operations of embarking or disembarking", the action is covered by Article 17; and the damages related to any injury proximately caused by the accident are limited as provided in Article 24(2). Any action, however founded, seeking recovery for injuries comprehended by Article 17 and caused by an accident occurring in a place specified by Article 17 can be brought *only* subject to the conditions and limits established by the Warsaw system. To this extent at least, defendant is correct in contending that the treaty provides for the exclusive relief available for injury sustained in international transportation.

■ An aspect of the exclusive relief issue much more difficult to resolve concerns types of injuries which are neither explicitly nor implicitly comprehended by Article 17, 18, or 19 and which are not mentioned in the legislative history. It is unclear what effect the Warsaw system should have on liability for such injuries. Proceeding from an *inclusio unius est exclusio alterius* kind of analysis, defendant argues that, if the injury is not comprehended, any recovery based on the injury is precluded. Although plaintiff's papers are not lucid on this point, it would appear that she would be willing to accept the limit of liability even for injuries not comprehended by the terms of the Convention. Despite some reservations, the court concludes that such injuries may give rise to causes of action not subject to any of the conditions or limits of the Warsaw system.

Defendant's reasoning is far from frivolous; indeed, it is rather compelling. Swissair would argue one primary objective of the treaty was to limit carrier liability. The intent of its framers was to enumerate all types of injuries for which recovery would be allowed. Hence, to effect the purpose of the Convention, no action should be allowed based on injuries not comprehended by it.

■ Deeper scrutiny reveals such analysis to be specious. There can be little question that defendant accurately perceives both purpose and intent. However, it is quite possible that the drafters did not choose the appropriate words to effect their intent. They may well have believed they had enumerated all types of injuries for which any law provided a remedy. Such an inference from their silence on some types of injury is at least as plausible as the inference defendant would draw. Indeed, the former inference may be reinforced by the Convention's failure to explicitly preclude recovery for types of injury not comprehended by Article 17, 18, and 19. Article 24 clearly does preclude alternative relief for injuries comprehended by the treaty, i. e., "covered" by Articles 17, 18, and 19. It would have been a simple matter to preclude all relief for other unenumerated types of injuries; but no article to that effect was incorporated. Given the purpose of the Convention to limit liability, it is extremely unlikely that the drafters considered other types of injuries but deliberately decided to leave the law unchanged as to them, allowing whatever recoveries the law permitted. Furthermore, they must have been aware that to extinguish pre-existing rights their intent and expression must be clear; ambiguity or silence is rarely, if ever, sufficient. See Eck v. United Arab Airlines, Inc., 15 N.Y.2d 53, 255 N.Y.S.2d 249, 203 N.E.2d 640 (1964). Therefore, the most plausible inference to be drawn from the Convention's silence on some types of injury is that the drafters neglected to deal with a problem which they would have wished to resolve if they had been aware of it.[10]

■ To fill this unfortunate vacuum, defendant might argue that the purpose of the treaty to limit liability

---

10. Even if they were aware of the problem and chose to ignore it, there is absolutely no indication of any common intent regarding how to deal with it.

should be held paramount and that that purpose is best effected by denying relief for types of injury not comprehended. But this court believes that that purpose could more appropriately be effected by construing the types of injury enumerated expansively to comprehend as many types of injury as possible for which there is normally legal redress.[11] After all, a concomitant of the purpose to limit liability was a purpose to facilitate recovery by injured passengers. See Lowenfels I at 499–500. Given the total lack of expression and the absence of a meaningful basis for inference regarding types of injury not comprehended by Articles 17, 18, and 19, I conclude that causes of action based on such types of injury should be governed exclusively by the substantive law which would be applicable if the treaty did not exist.[12] In reaching this determination, I am not unaware that the necessity of determining the otherwise applicable law may impede the achievement of one purpose of the Convention (to facilitate claims) in those cases where the otherwise applicable law is not easily determined. However, no other appropriate alternative is apparent.

■■■ At this point it would be well to foreclose a claim plaintiff might make on the basis of the foregoing analysis. Plaintiff has alleged that her injuries were caused not only during the time she was confined in the airplane but also during the time she was in Amman. Hence, she could claim that any injuries caused during that time did not occur "on board the aircraft" and, therefore, are not covered by Article 17. It is un-

likely that she would make such a claim since she would then have to establish all elements of a negligence or breach of contract cause of action; that is to say, the presumption of liability would not apply. Nevertheless, I am constrained to construe "on board the aircraft" to include the time spent in Amman.

■■■ As the earlier opinion in this case observed, hijackings were "probably not within the specific contemplation of the parties at the time the Warsaw Convention was promulgated". 351 F.Supp. at 706. Although the Montreal Agreement may have resolved any doubt about whether a hijacking should be considered an accident, it did not conform all of the language of the Warsaw Convention to comport with this resolution. The drafters of the Convention undoubtedly assumed that the time "on board the aircraft" included all of the time between embarkation at the origin of a flight and disembarkation at a scheduled destination of a flight. Furthermore, the purpose of the Convention to limit liability is best served by such a construction. Presumably, if a third party caused the plaintiff injury while she was detained off the aircraft, the airline would be subrogated to her claim against that party; but it would bear primary liability. In any case and particularly in this case, it would be extremely difficult to determine what part of plaintiff's alleged injuries was caused directly by the accident on the aircraft, what part was caused by events themselves proximately caused by the accident, and what part was caused by events not proximately caused by the ac-

---

11. See Section II *infra.* Cf. Article 17 of the Guatamala Protocol which substitutes "death or personal injury" for the phrase at issue. Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955. Official text in ICAO Doc. 8932 (1971) (signed at Guatamala, March 8, 1971, not yet ratified). See also Lowenfels, Hijacking, Warsaw, and the Problem of Psychic Trauma, 1 Syracuse Int'l L.J. 345

(1973) [hereinafter cited as "Lowenfels II"].

12. For some purposes the Convention itself refers to such law. See Article 21 (contributory negligence), Article 24 (2) (person with right to sue), and Article 28 (procedure). However, the court does not pretend that any inference can be drawn from the fact that the drafters knew how to make external law applicable through the Convention and did not explicitly do so with respect to the basis of a cause of action. But cf. Lowenfels II at 349.

**1248**

cident, by the negligence of the carrier, or by a breach of contract. Therefore, all events which caused the plaintiff's alleged injuries and which occurred during the time between leaving Zurich and returning to Zurich shall be considered to have occurred "on board the aircraft".

## II. *Comprehension of Mental and Psychosomatic Injuries*

Swissair contends that the mental and psychosomatic injuries here alleged are not comprehended by the types of injury enumerated in Article 17, the only article which could reasonably be construed to include them. Swissair then contends that, since Article 24 provides that actions can be brought only subject to the Warsaw system's conditions and limits, no recovery is possible for the injuries alleged. Defendant does not point out that the actions so limited and conditioned are only actions on cases covered by Articles 17, 18, and 19. Either the mental and psychosomatic injuries alleged are covered by Article 17, or they are not covered by Article 17. Defendant cannot have it each way for different arguments to suit its purposes. The analysis of the exclusive relief issue in Section I of this opinion should make it abundantly clear that the Warsaw system conditions and limits plaintiff's claim if and only if plaintiff's alleged injuries are comprehended by Article 17. Hence, the determination of whether mental and psychosomatic injuries are comprehended by the phrase "death or wounding . . . or any other bodily injury", as that phrase is used in Article 17, is extremely important in this case.

Given my resolution of the exclusive relief issue, it is questionable whether defendant would continue to vehemently assert that Article 17 does not comprehend the injuries alleged. However, plaintiff would undoubtedly continue to argue that the injuries were compre-

hended so that she could take advantage of the Warsaw system's presumption of liability and waiver of defenses.

As indicated in Section I of this opinion, there is absolutely no indication in either the language of the Convention or its legislative history that the drafters intended to preclude all liability for some types of injury.[13] But it is also clear that the drafters did wish to limit the carriers' potential liability and to facilitate recovery by injured passengers. All of the provisions of the Convention are clearly designed to effect these purposes. From the face of the Convention, it appears that the drafters were interested in categorizing the types of causes of action which might be brought against a carrier for damages caused by an accident in international transportation (Articles 17, 18, and 19), in enumerating the defenses which the carrier could assert (Articles 20 and 21), and in limiting the liability to which the carrier could be subject for each category of injury (Articles 22 and 24). In light of these propositions, it is logical to infer that the drafters either believed that the phrase at issue comprehended all personal injuries involving the organic functioning of a human being or neglected to consider injuries not comprehended by the phrase. If they intended the former, Article 17 should be interpreted to comprehend mental and psychosomatic injuries. If they had no specific intention, Article 17 should be interpreted in the manner most likely to effect the purposes of the Convention.

I now turn to a more specific analysis of whether the phrase, "en cas de mort, de blessure ou de toute autre lésion corporelle", comprehends mental and psychosomatic injuries. In this court's earlier opinion, it was noted that the Fifth Circuit concluded that "[t]he binding meaning of the terms [of the

---

13. Even if the drafters did intend such preclusion, it could not be presumed that the Executive and the Senate knew of and adopted that intent. Indeed, it is likely that

neither branch would have approved the Convention if it was aware of such an intent.

Convention] is the French legal meaning." 351 F.Supp. at 708, citing Block v. Compagnie Nationale Air France, 386 F.2d 323, 330 (5th Cir. 1967). Despite that citation, I am now persuaded that the meaning of the phrase at issue is to be determined by attempting to ascertain the intentions of the drafters and signatories, the understanding of the Executive and Senate when they ratified and adhered to the Convention, the subsequent actions of the signatories to the extent such actions clarify intent, and the construction most likely to effect the purposes of the Convention. It is true that this country adhered to the French text of the Convention, as did all of the signatories (although the Senate heard and voted on the English translation); but, as I now view the matter, that fact does not mean that the French legal meaning of the words or the French legal interpretation of the treaty is binding. See Rosman v. Trans World Airlines, Inc., 34 N.Y.2d 385, 358 N.Y.S.2d 97, 106–07, 314 N.E.2d 848 (1974). The nuances of interpretation of the Convention were not analyzed in terms of the French or any other legal system. The language was merely intended to express the common understanding of the drafters in a common international language so that confusion would be limited and could be resolved to some extent by reference to the common meaning of one international language. The Convention is now part of the federal law of this country. Absent some explicit provision to the contrary, therefore, it should be interpreted in light of and according to that law. Since there is no contention that the English translation of the phrase at issue is at all misleading or inaccurate with respect to the common French meaning of that phrase, that translation has been and will be referred to for purposes of analysis. In any case, there is no convincing evidence that the French legal meaning of the phrase would be at all elucidating. See Lowenfels, Hijacking, Warsaw, and the Problem of Psychic Trauma, 1 Syracuse Int'l L.J. 345, 348–49 (1973) [hereinafter cited as "Lowenfels II"]. There is, of course, no question that the Convention could have been clearer in any language.

Most of the approaches to construction urged by each side could be invoked to support the position of either litigant and, hence, actually support neither position. The litigants apparently agree that mental injury causes of action existed at the time the treaty was ratified. In addition, they appear to assume that the signatories were aware of the existence of such causes of action. Plaintiff infers, therefore, that the High Contracting Parties must have intended to include such injuries since they are not explicitly excluded. Defendant suggests that the signatories must have intended to exclude such injuries since they were not clearly included. I deduce that the Parties probably had no specific intention at all about mental and psychosomatic injuries because, if they had, they would have clearly expressed their intentions.

The same type of specious argumentation can be applied to subsequent actions and inactions of the Parties with respect to the substitution of the phrase "personal injuries" for the phrase at issue. The original English translation which the Senate ratified uses "personal injuries" as a descriptive marginal note for Article 17. See 49 Stat. 3000 et seq., 3018 (1934). The passenger ticket refers to limitation of liability on "death or personal injuries." [14] The problem was raised in 1954 at the Hague Conference (in which the United States did not participate) to modify the Warsaw Convention, and no action was taken. Finally, for some unstated reason, "personal injuries" was substituted for the phrase at issue in the Guatemala Protocol, a treaty drafted to supplant the Warsaw system. In none of these instances is it clear why "personal injuries" was used instead of the phrase at

---

14. Note this court's earlier reference to the adequacy of such notice. 351 F.Supp. at 708.

issue. "Personal injuries" could have been used in most cases as a shorthand for the phrase at issue, or as a clarification of it, or as a means of expanding its comprehension.

Similarly, debate about the meaning of the words in the phrase itself is unenlightening. *Ejusdem generis* and *noscitur a sociis* arguments can be constructed to cut either way. Superficially the words "death", "wounding", and "bodily injury" have some characteristics in common which do not appear to be shared by "mental or psychosomatic injury". Defendant could, therefore, argue that such injury is not comprehended by Article 17. "Death", "wounding", and "bodily injury" initially and commonly do evoke thoughts of broken bones, cuts and gashes, concussions, internal and external hemorrhaging, etc. Plaintiff contends, however, that, if they are construed only in that manner, "any other bodily injury" adds nothing to "wounding" and such redundancy should not be presumed. But harried draftsmen sometimes use redundancies in an attempt to be certain they have included all of the things they intend to include despite the different constructions which might be imposed on their words. Assuming there is no redundancy, however, "wounding" may be intended to comprehend cuts and other external injuries, while "other bodily injury" may be read to comprehend internal injuries. However, "death", "wounding", and "bodily injury" in English or in French can, almost as easily, all be construed to relate to emotional and mental injury. "Bodily injury" is perhaps particularly significant in this regard because of the vast strides which have been taken relatively recently in the fields of physiology and psychology. It becomes increasingly evident that the mind is part of the body. Today, it is commonly recognized that mental reactions and functions are merely more subtle and less well understood physiological phenomena than the physiological phenomena associated with the functioning of the tissues and organs and with physical trauma.[15] Therefore, the phrase at issue could easily be construed to comprehend all personal injuries which directly and adversely affect the organic functions of a human being. This construction could be reinforced by comparing Article 17 with Article 19, the two articles dealing with what could be characterized as personal injury causes of action. Article 19 comprehends injuries arising from delay. Article 17, it could be argued, attempts to make clear that such non-organic, consequential injuries were excluded from it but that all organic, personal injuries were included. In the end all of these arguments and approaches are unconvincing and inconclusive. The various maxims generally serve no purpose other than to help determine purpose and intent and to integrate a new rule of law with the relevant, pre-existing law. In this case, they do not even help in those ways.

But purpose and intent analysis itself is very useful. Although the draftsmen probably had no specific intent as to whether Article 17 comprehended mental and psychosomatic injuries, they did have a general intent to effect the purpose of the treaty and apparently took some pains to make it comprehensive. That they may have neglected one area should not vitiate the purpose of the Convention. There is no evidence they intended to preclude recovery for any particular type of injury. To regulate in a uniform manner the liability of the carrier, they must have intended to be comprehensive. To effect the treaty's avowed purpose, the types of injuries enumerated should be construed expansively to encompass as many types of injury as are colorably within the ambit of the enumerated types. Mental and psychosomatic injuries are colorably within that ambit and are, therefore, comprehended by Article 17.

In reaching this determination, I am not unmindful of other courts which

---

15. See, e. g., Karl A. Menninger, The Human Mind 22 (3d ed. rev. 1945).

have reached different conclusions when deciding similar cases involving mental injuries caused by hijackings. Each court decided its case after the earlier *Husserl* opinion, in which this court raised questions about the meaning of the phrase at issue and suggested tentative conclusions. To the extent those courts' citations of that opinion indicated some small reliance on this court's dictum concerning the phrase at issue, I proffer my apologies but now conclude that the issue must be decided as has been indicated.

In Burnett v. Trans World Airlines, Inc., 368 F.Supp. 1152 (D.N.M. 1973), Judge Steel, in construing Article 17, held that mental anguish alone was not comprehended. But he also held that "bodily injury" was compensable even though not caused by physical contact and that "emotional distress . . . directly precipitated by the bodily injury [would be] considered as a part of the bodily injury itself." 368 F.Supp. at 1158. The New York Court of Appeals construed the phrase at issue similarly in the companion cases of Herman v. Trans World Airlines, Inc. and Rosman v. Trans World Airlines, Inc., 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E. 2d 848 (1974). Judge Rabin, writing for the majority, held that the airline would be liable for "palpable, objective bodily injuries, including those caused by the psychic trauma of the hijacking, and for damages flowing from those bodily injuries, but not for the trauma as such or for the nonbodily or behavioral manifestations of that trauma." 358 N.Y.S.2d at 110, 314 N.E.2d at 857. With these scholarly and well-considered opinions, I respectfully disagree only to the extent that I believe mental injury alone should be compensable, if the otherwise applicable substantive law provides an appropriate cause of action. To hold otherwise, in my view, would not only create confusing problems of proof but also limit the effectiveness of the Warsaw system in achieving its purpose.

On the basis of the preceding analysis alone, defendant's motion would have to be denied; but, in an attempt to foreclose or foreshorten further motions which would delay the final disposition of this protracted case, I believe it necessary to discuss certain matters not yet explicitly raised by the parties.

### III. *Basis of Claim for Relief*

It has been noted earlier that the Warsaw Convention did not create any cause of action. At first blush this proposition may seem incongruous and incorrect. The proprosition is well-established, however, and it does draw significant support from the terms and purpose of the Convention. To be sure, the language "shall be liable" in Articles 17, 18, and 19 does suggest the creation of a cause of action; but it can just as easily be construed to mean, "shall be liable assuming the substantive law which would be applicable in the absence of the Convention creates a cause of action for the injury alleged." Article 24 lends credence to this construction in several respects. It specifies that actions "covered by" Articles 17, 18, and 19, "however founded", can only be brought "subject to" the conditions and limits set out in the Convention. If the drafters had intended Articles 17, 18, and 19 to create independent causes of action, they probably would have referred to causes "arising under" those articles rather than "covered by" them. The phrase "however founded" likewise implies that the foundation of the causes of action is not in the articles. Furthermore, if the causes were created by the Convention, they would not be "subject to" the limits and conditions; but rather those limits and conditions would be integral parts of the causes of action themselves. In fairness, nonetheless, it must be noted that Article 30 does use the phrase, "shall have a right of action" from which a contrary inference could be drawn.

In addition, the expressed purpose of the Convention is consistent with a con-

struction which denies that the treaty created a cause of action. Its purpose is to regulate "in a uniform manner . . . the liability of the carrier," and one means chosen to effect that purpose was to limit the carriers' liability. See Articles 22 and 24. Obviously, creating liability where none would otherwise exist would not serve that end, although it must be conceded that it might serve the Convention's purpose to facilitate recovery. Specific articles of the Convention attempt to regulate liability in a uniform manner by establishing a presumption of liability (Articles 17, 18, and 19), by limiting liability (Articles 22 and 24), and by establishing defenses against liability (Articles 20 and 21). Only Article 30 directly implies that actions may be brought based on the Convention; all other articles merely condition and limit any action which is brought.

■ Regardless of the persuasiveness of this analysis, the proposition that no cause of action is created by the Convention is well-established by case law. See Noel v. Linea Aeropostal Venezolana, 247 F.2d 677 (2d Cir.), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L. Ed.2d 262 (1957); Komlos v. Compagnie Nationale Air France, 111 F.Supp. 393 (S.D.N.Y.1952), rev'd on other grounds, 209 F.2d 436 (2d Cir. 1953). See also Lowenfels I at 517–19. It might be noted that this proposition is consistent with this court's conclusion that the Convention does not extinguish any cause of action either. In other words, the Convention is neutral with respect to the existence of a cause of action and merely conditions and limits any action which exists under otherwise applicable law.

For this reason, plaintiff's "alternative" claims are necessary. In order to recover in an action covered by the Convention, a plaintiff must allege a legal theory which would allow him to recover for the injuries alleged and which could conceivably apply to the situation which caused those injuries. Furthermore, the legal theory, or cause of action, must ex-

ist under the substantive law which would be applicable in the absence of the Convention.

■ This last point raises an issue not dealt with by the parties in this case. Although unable to locate any authority directly on point, I believe that the otherwise applicable substantive law should be determined by applying the appropriate conflicts of law principles. Cf. Lowenfels II at 350–51. Since this is a diversity case in a federal court in New York, the appropriate principles are New York conflicts of law principles. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It is likely that the application of those principles would result in a determination that the substantive law of New York is applicable here. See Rosenthal v. Warren, 342 F. Supp. 246 (S.D.N.Y.1972), aff'd, 475 F. 2d 438 (2d Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). See generally Lowenfels I at 526–32. Assuming New York law does apply, that law provides a cause of action for mental and psychosomatic injuries. Battalla v. State, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961). To the extent that a cause of action exists for such injuries, Swissair's liability will be determined subject to the conditions and limits of the Warsaw Convention as modified by the Montreal Agreement. Plaintiff, of course, will have to prove causation and actual injury by a preponderance of the evidence in the same manner she would have to in the absence of the Convention.

IV. *Summary and Conclusion*

In deciding the issues raised on this motion for summary judgment and for dismissal, this court has been concerned with effecting the intent of the drafters and with promoting the purposes of the Warsaw system. See Eck v. United Arab Airlines, 15 N.Y.2d 53, 255 N.Y.S. 2d 249, 203 N.E.2d 640 (1964). Its interpretation of those intents and pur-

poses leads to the conclusions: (1) that, if and only if Articles 17, 18, and 19 comprehend the type of injury alleged, then the Warsaw system exclusively conditions and limits the liability to which the carrier may be subject for that injury, regardless of its ultimate cause; (2) that the phrase "death or wounding . . . or any other bodily injury", as used in Article 17, does comprehend mental injuries; and (3) that the otherwise applicable substantive law must provide the appropriate cause of action for the injuries alleged.

On the basis of the foregoing reasoning and analysis, defendant's motion for summary judgment and dismissal must be and is hereby denied.

It is so ordered.